Daniel, J.
The first bill of exceptions founded on the refusal of the Circuit court to quash the indictment, because there had been no sufficient examination of the accused by an examining court, is not mentioned either in his petition or in the written argument of his counsel. I have, however, carefully looked to the evidence adduced upon the hearing of the motion, and I have been wholly unable to discover any ground for the allegation of such insufficiency. The examination seems to have been duly heard at a regular term of the County court, the term at which the accused was by his recognizance required to appear. There seems to be an exact correspondence between the certificate of the justice who admitted the accused to bail and the record of the examination by the County *572 court in respect to the nature of the offence; which is se^ ou^ i° each of them in plain, sufficient and unamterms. And whilst the indictment contains three counts, yet they each charge the same felony; a felony identical with that for which the accused was examined, and remanded to the Circuit court for trial.
The true ground on which the accused rested his defence in the Circuit court, and on which he seeks here to reverse the action of that court, is, doubtless, that presented in his two special pleas. In each of these pleas he seeks to set up the order made by the examining court in October 1855, as a discharge — a discharge exempting him from all liability to be thereafter questioned or tried for the same offence. The order in question is briefly as follows: “ Ordered, that this case be dismissed.”
It is conceded that the effect of the order turns upon the true construction of the 11th section of chapter 205 of the Code of 1849, which declares, that “ if the court in which a person is examined as aforesaid, discharge him, he shall not thereafter be questioned or tried for the same offence.”
Reading this section by itself, the construction would seem to be a natural, if not a necessary one, that the discharge therein mentioned is a discharge consequent upon an examination of the prisoner by the court. And when we connect it with the preceding provisions of the chapter, the construction appears still more obvious. The sections previous to the 6th having declared in what cases examinations are to be had, how the courts which are to make such examinations are to be composed, &c. that section provides, that “ upon such examination, if it appear to the court that there is not probable cause for charging the accused with the offence, he shall be discharged.” Adopting the course pursued by the attorney general, in his printed argument, of combining the two sections (the *573 6th and 11th) and reading them as one, and throwing-out of view all previous legislation on the subject, it would seem impossible to escape his conclusion, that the discharge mentioned in the one is identical with that mentioned in the other of these sections; and that no discharge can, under the provisions of the 11th section, be relied on as a bar to subsequent question or trial, except such a discharge as is adjudged, by the court, upon an examination, in which it has been made to appear that there is not probable cause for charging the accused with the offence.
The counsel for the accused, however, refers to the 3d section of the act of 1804, in which the legislature for the first time declared the effect of a discharge by the examining court, on a subsequent prosecution for the same offence. And he calls our attention more particularly to that portion of the section in which the court is mentioned as “ the court of the county or corporation in which the offence is or may be examinable.” Upon the words which I have italicised he founds the argument that, under the acts of 1804 and 1819 (.in both of which the same language is used), the force of a discharge, as a bar to further prosecution, was in no wise dependent on the fact of its being the result of an examination: that the fact of its being pronounced by a court of competent authority, a court having the right to examine the accused, constituted all that was essential to the validity of the discharge as a bar. And he contends that the revisors, in employing the words, “ is examined,” in place of the words, “ is or may be examinable,” did not mean to effect any change in the law in this particular; and that the words, “ the court in which a person is examined as aforesaid,” are merely intended to designate the court whose discharge is a bar; and do riot qualify the discharge further than to show what court may make it, viz: the County court, at its regular or *574 special session, organized as an examining court, with ^ve justices on the bench, &c.
It cannot be denied that the particular words referred to in the act of 1804, do countenance the construction of that act, contended for by the counsel for the accused. But on looking to the whole of the 3d section of the act and the other parts of the act to which it refers, it becomes, I think, quite obvious that such is not the true construction. The language of the section is, “If any person charged with any crime or offence against the commonwealth, shall be acquitted or discharged from further prosecution by the court of the county or corporation in which the offence is or may be examinable, he or she shall not thereafter be examined, questioned or tried for the same crime or offence, but may plead such acquittal or discharge in bar of any other or further examination or trial for the same crime or offence; any law, custom, usage or opinion to the contrary in any wise notwithstanding.” 2 Rev. Code (1808), p. 38.
The office of this section is not to declare in what cases the party is to be discharged; but to declare the effect of the discharge on a subsequent prosecution for the same offence. The power to discharge is conferred by the first section; and when we look to that we see that a court is to be held “ for the examination of the fact, which court, consisting of five members at the least, shall consider whether, as the case may appear to them, the prisoner may he discharged from further prosecution, or may be tried in the county or corporation or in the district court, &e.” The power to discharge is no where else mentioned in the act. Is it not then a necessary inference that when in the third section the legislature attached to an acquittal or discharge the effect of a bar, they had in contemplation no other discharge than a discharge from further prosecution, pronounced by the court upon an examination of the *575 fact and a consideration of the case? Why declare that a discharge may be pleaded in bar of any other or further examination or trial, if such discharge had resulted from a previous examination or trial ?
The counsel for the accused, however, in further support of his view, refers us to the fifth section of chapter 205 of the Code, regulating the power of the examining court over the subject of adjournment; in which the court is prohibited from adjourning the examination, except on the motion of the accused, &c. “ beyond the third regular term after the examination was ordered.” And assuming that the discharge of a prisoner from further prosecution would be the result of a continuance of the case (except under the circumstances provided for), “beyond the third term,” he says that here is an instance of final discharge without examination, and consequently that the construction which would limit the bar sanctioned by the eleventh section to the single case of a discharge upon an examination, must be unsound, inasmuch as no good reason can be assigned why the legislature should prohibit further prosecution in the one instance of final discharge, and not in the other. And hence he concludes that the term “ discharge” cannot be restricted in its meaning, by referring it to the 6th section, but must be taken in its largest sense, embracing any discharge whatever by the examining court.
In the reply by the attorney general to this assumption, there seems to me to be much force. He refers us to section 36 of chapter 208, in which’it is provided,
“ that every person charged with felony, and remanded to a superior court for trial, shall be forever discharged from prosecution for the ofience, if there be three regular terms of such court after his examination, without atrial, unless the failure to try him” results from some of the causes there mentioned. And he argues, that as the legislature have thought it necessary to attach,. *576 in express terms, to the delays in the superior court the consequences of a discharge from further prosecution, the fair conclusion from their silence in respect to such consequences as flowing from the prohibited delays in the examining court, is, that they did not mean to attach to the latter the same or like consequences.
This view derives support from the fact, that in the act of 1804 the examining court was restricted in its power to adjourn to a period not longer than three days, except on the application of the prisoner, and then for not more than ten days from the day of adjournment.
It is difficult to suppose that in 1804 the legislature intended that an irregular adjournment by the justices occasioning a delay longer, by a day or two, than that allowed by the act, should operate the grave result of a final discharge of the accused. And though the legislature in all the subsequent acts have extended the period to which the court may adjourn, yet, as they have still remained silent as to what shall be the effect of an adjournment to a period more distant than that allowed by the law, there arises a strong inference that these provisions, with respect to adjournments by the examining courts, are simply directory; and that a departure from them does not result in the final discharge of persons accused.
As to this question, however, I do not deem it necessary to express a definitive opinion. Its decision is not, I think, material in its bearing on the argument under consideration. For if it be conceded (as contended for y the counsel for the accused) that a continuance for more than three terms of the County court would result in a final discharge of the party accused, such a discharge would be an act of the law, and not the result of a judgment pronounced by the examining court, and would plainly stand outside of *577 the provisions of the 11th section of chapter 205, construed even as the counsel contends it ought to be. For according to his construction, a discharge, to avail the accused as a bar, must yet be a discharge by a court in which the offence is examinable, a court lawfully held, &c.; whereas the discharge in the case supposed would be the result flowing from the fact that there was no longer any court in which the offence could be legally examined. Upon the supposition that the law intends a discharge to flow from a continuance beyond the third term, a prisoner, if still held in custody after the expiration of such term, would be illegally detained, and would be discharged upon a habeas corpus. Green's Case, 1 Rob. R. 731.) And if the prisoner should not avail himself of the writ, he might doubtless, if sent on by a County court subsequently held, have the indictment quashed, on the ground that he had not been examined by a competent court. Or if a court held subsequent to the third term, by adjournment should discharge a prisoner on the ground that it had no jurisdiction of the case, and the prisoner being subsequently prosecuted, should, instead of resorting to other modes of relief, wait until he was indicted, and then seek to rely on a plea of such discharge, it is obvious, for the reasons already stated, that the plea, if received, would be allowed, not under the 11th section, but by virtue of some other law: such discharge having been pronounced not by a court in which the offence was examined or was examinable, but by a court having no legal capacity or power to proceed with the examination.
The history of the circumstances and reasons which led to the adoption of the provisions of the 3d section of the act of 1804, furnishes strong support in aid of these views. In Myers' Case, 1 Va. Cas. 188, it is stated by Judge White, as also by two of the distinguished counsel of the prisoner (Messrs. Tazewell and *578 Taylor), that the passage of this section was probably caused by the expression of an opinion by Judge Tucker, in his notes on Blackstcme’s Commentaries, to the effect that an acquittal by an examining court did not in any case constitute a bar to further prosecution. And on a reference to the 5th volume of his work, p. 335 (in notes), it will be seen that the judge there uses the following language : “ There have been decisions to the effect that if a person brought before an examining court, and wgon such examination be discharged by that court, such discharge may be pleaded as an acquittaland he then proceeds to express the opinion that such was not the case, and founds his opinion mainly on the idea that acquittal was the legal converse of conviction; and as the examining court had no power to convict, so neither had they, in the absence of an express provision conferring it, the power to render such a discharge as could be pleaded as a bar to a subsequent prosecution.
It is thus apparent that the evil was, that doubts existed whether a regular discharge upon an examination by the examining courts had the force of an acquittal, and it was to remedy this evil and to remove these doubts, that the 3d section of the act of 1804 was passed.
And on looking into the course of legislation in the interval between 1804 and 1849, I can see nothiug calculated to reflect doubt on the construction of the law on this subject, as it now stands.
In 1819, as has been already stated, the 3d section of the act of 1804 was re-enacted without alteration; and no change was made in the law in this regard till the revision of the criminal laws in 1847-8. In the 3d section of the chapter on examining courts (Sess. Acts 1847-8, p. 139), the power to discharge is conferred in the following terms: “ If it shall appear to the court, on the whole examination, that no offence *579 has been committed, or that there is not probable cause for charging the person with the offence, he shall be discharged.” And the effect of a discharge is dared in the 8th section as follows : “ If any person shall be discharged by the County or Corporation court in which his offence is examinable, he shall not thereafter be questioned or tried for the same offence, except on indictment found within twelve months thereafter; in which case, no other examination shall be necessary.” It is evident that in the 3d section of this chapter the word “ discharged” is used as the equivalent of the words “ discharged from further prosecution,” employed in the corresponding part of the act of 1S04; and it is, I think, equally evident that it is used in the 8th section in the like sense, and is substituted for the words “ acquitted or discharged from further prosecution,” employed in the 3rd section of the act of 1804. And the only material difference between the 8th section of the law of 1847-8 and the 3d section of the act of 1804, contemplated by the legislature, is, I think, that the former allows of a prosecution by indictment after a discharge by the examining court. Such evidently was the view of the matter taken by the revisors, in the notes accompanying their report to the legislature.
The 11th section of the chapter on “ examining courts,” as reported by them, was as follows: “If the court in which a prisoner is examined as aforesaid, discharge him, he shall not thereafter be examined, questioned or tried for the same offence, unless new evidence which is material, he discovered; in which case, he may again be prosecuted within one year from the time of such discharge, but not after.” And in assigning their reasons for recommending the adoption of this section in place of the Sth section of the law of 1847-8, they say, “When, after full examination by a *580 court, the prisoner is discharged for want of proof of even P1'0^^ cause for a trial, it is thought hard that should be yet liable to be taken up and indicted 011 ^38 same evidence, without examination.” They therefore proposed to modify the law of 1847-8, so as to make the liability of a party discharged by the examining court, to be again prosecuted for the same offence, dependent on the discovery of new and material evidence. The legislature, however, refused to allow of a subsequent prosecution, either as provided for in the law of 1S47-8, or as recommended by the revisors, but adopted the first part of the section reported by them, after striking out the provision in respect to a subsequent prosecution, on the discovery of new evidence. They thus, I think, restored the law substantially to the footing on which it stood by the act of 1804 ; and I feel satisfied that the effect of the section in question is to attribute the qualities of a legal bar to such a discharge by an examining court, only, as may be made by the court upon examination.
It is incumbent on the accused, therefore, to show that the order on which he relies in support of his pleas of former acquittal, is substantially a discharge upon examination. It may be conceded, that in view of the loose and hurried manner in which the proceedings in the County courts are often recorded, it would be harsh in the court to require that the record exhibited by the accused should set out the fact of his acquittal, with the clearness and precision of language that would be looked for in the orders of a court whose proceedings are recorded in extenso. Still, the record which he vouches, must be of such a character as to prove, with reasonable certainty at least, the fact which it is offered to establish. The words of the order must be at least such as (of their own sense, or by means of reference to the context) to be capable *581 without the aid of strained and unnatural inferences, of certifying the fact that the discharge relied on was the result of an examination.
Applying this test to the order in question, it fails, I think, to show the fact for which it is vouched. The words of the order, so far from being appropriate to convey the idea of trial and acquittal, have had a definition affixed to them, by judicial decisions and analogous cases, importing a cessation of the proceedings without any examination whatever of the cause upon its merits. Lindsay v. The Commonwealth, 2 Va. Cas. 345; Wortham v. The Commonwealth, 5 Rand. 669. And there is nothing on the face of the proceedings with which the words of the order can be connected, so as to be made capable of showing that they were used for the purpose of indicating a discharge of the accused upon examination.
As this view, if concurred in (as I understand it is, by a majority of the court), results in an affirmance of the judgment, I deem it unnecessary to express any opinion as to the other question discussed by the attorney general.
Moncure and Samuels, Js. concurred in the opinion of Daniel, J.
Allen, P. concurred in the result.
Judgment affirmed.